# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                        )
**WALDESTRUDIS FRANCESCHI,**            )
      **Plaintiff,**          )
                                        )          **CIVIL ACTION**
    **v.**                            )          **No. 11-40217-TSH**
                                        )
**MICHAEL J. ASTRUE,**                  )
**Commissioner,**                       )
**Social Security Administration,**     )
      **Defendant.**          )
_____ )

### MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY (Docket No. 9) AND DEFENDANT'S MOTION FOR ORDER AFFIRMING COMMISSIONER (Docket No. 12)
### March 25, 2012

**HILLMAN, J.**

### Nature of the Proceeding

Plaintiff, Waldestrudis Franceschi ("Plaintiff"), has brought this action against

Defendant, Michael J. Astrue, as Commissioner of the Social Security Administration

("Commissioner" or "Defendant") seeking judicial review of a final decision by the

Commissioner denying Plaintiff's application for Supplemental Security Income ("SSI").

Plaintiff moves for an order reversing Defendant's final decision, claiming that it was not based

upon substantial evidence and should be reversed or remanded for further proceedings. *Pl's Mot.*

*to Reverse* (Docket No. 9).   Defendant asserts that its decision was based upon adequate grounds

and moves for an order affirming its final decision.[1]  *Def's Mot. to Affirm the Dec. of the Comm.* (Docket No. 12).  For the reasons stated below, the Commissioner's motion is granted and the decision of the Commissioner is affirmed.

## Procedural History

Plaintiff first applied for SSI on September 28, 2009 based on a combination of physical and mental conditions, including depression, anxiety, post-traumatic stress disorder ("PTSD"), spinal disc degeneration, spinal disc herniation and impaired movement in the shoulder.  (*Tr.*, at 83).  This claim was denied initially on March 19, 2010 and again on June 30, 2010.  (*Id.*).  At Plaintiff's request a hearing was conducted by an administrative law judge ("ALJ") on March 7, 2011.  (*See id.*, at 15-74).  After taking evidence from Plaintiff and a vocational expert ("VE") at this hearing, the ALJ ruled that Plaintiff was not disabled under § 1614(a)(3)(A) of the Social Security Act ("Act") on March 22, 2011.  (*Id.*, at 80-93).  This ruling was initially sent to the Decisions Review Board for review, but that Board was dissolved prior to concluding its review.  (*Id.*, at 83).  Plaintiff's claim was then transferred the Appeals Council, which, on September 14, 2011, "found no reason under its rules" to review the ALJ's decision, rendering that decision final.  (*Id.*, at 1-6).

In response Plaintiff then filed a Complaint in United States District Court on November 15, 2011.  Having exhausted all administrative options, Plaintiff's claim is now ripe for review by this Court under 42 U.S.C. § 405(g).

---

[1] A transcript of the Social Security Administration official record (*"Tr."*) has been filed with the court under seal. (Docket No. 8).

**Background**

Plaintiff was born in Worcester, Massachusetts on March 30, 1968 and asserts that he has lived in and around that city for most of his life, with the exception of a period, ages 12-15, when he lived with his father in Puerto Rico. (*Tr.*, at 407). He is currently without a permanent residence and lives temporarily with his aunt in Worcester. (*Id.*). He has a long history of substance abuse and addiction, and has spent at least fifteen years of his adult life in prison starting at the age of twenty one, mostly on drug-related charges. (*Id.*, at 411, 589). Plaintiff has a sporadic work history including employment as an asphalt laborer, a conveyor belt picker at a sand and gravel company, a landscaper, and a painter. (*Id.*, at 44-45). Plaintiff also reports being unable to maintain a steady job because of his drug addiction, never remaining at any job for more than eight months. (*Id.*, at 45-46).

*Plaintiff's Substance Abuse and Mental Health Treatment*

After many unsuccessful attempts to stop using illegal drugs, Plaintiff enrolled for substance abuse treatment at Spectrum Health Systems ("Spectrum") in September of 2008. (*Id.*, at 363-64). Plaintiff's treatment at Spectrum included prescription methadone to combat opioid dependence (through April 2009) and face-to-face meetings with Spectrum staff. (*Id.*, at 316-440). Treatment records from Spectrum indicate that Plaintiff reported success in maintaining abstinence from illicit drug use and performing community service, but also reported difficulty finding employment. (*E.g. Tr.*, at 317, 321, 358). Treatment records generally noted that Plaintiff was alert, responsive and cooperative with Spectrum staff, though Plaintiff's frustration with his inability to find employment, at least in part because of his criminal record, was also consistently reported. (*Id.*). Spectrum staff also recorded sporadic absences. (*E.g. Tr.*, at 316, 318, 324, 327, 341). In September 2009 Plaintiff indicated to Spectrum staff that he intended to

apply for disability from the Social Security Administration.  (*Id.*, at 317-318).  When asked about his intentions plaintiff stated that "I know it's not right and I'm not going to justify it.  I'll probably get denied but I need money." (*Id.*).

Plaintiff's treatment was subsequently transferred to Community Healthlink ("Healthlink"), part of the UMass Medical Center, in October 2009 where he has received treatment for depression, anxiety and post-traumatic stress disorder as well as suboxone to treat Plaintiff's opioid dependence.  (*Id.*, at 24-25, 449-698).  At around the same time he began receiving treatment from Healthlink, Plaintiff began reporting increased levels of stress and social discomfort, as well as more significant back and shoulder pain.  (*See id.* at 494-95).  Plaintiff also reported auditory hallucinations for the first time.  (*Id.*, at 499).  Healthlink staff noted that Plaintiff was irritable, ambivalent about treatment and occasionally hostile, but also alert, responsive and able to both remember appointment dates and follow instructions.  (*Id.*, at 491-92).

Plaintiff's medical record indicates that he remained sober from beginning treatment at Spectrum until the time of the hearing, save for one documented relapse in April 2010.  (*Id.*, at 44, 689).  His mental health treatment continued through the time of his administrative hearing in March 2011.  (*See id.*).  Plaintiff was evaluated by two separate mental health professionals after initially applying for SSI.   (*Id.* at 407-11, 491-93, 583-85, 674).

Deborah Fields, M.D. treated Plaintiff from November 2009 until at least June 2010, during which time she completed two Psychiatric Disorder Questionnaires, in February and June 2010, and then a Mental Impairment Questionnaire in August of that year.  (*Id.*, at 24-25, 491-93, 583-85, 674).  All three of these documents indicate that Plaintiff suffers from Opioid Dependence and PTSD.  (*Id.*, at 491-93, 583-85, 674).  Additional conditions and symptoms

mentioned in some but not all of the documents include cocaine dependence, Antisocial Personality Disorder, Depressive Disorder, hypervigilance, hostility/irritability, anxiety and social withdrawal.  (*Id.*, at 491-93, 583-85, 674).  Dr. Fields also recorded Plaintiff's Global Assessment of Functioning ("GAF") Score in June 2010 as 45-50 (serious symptoms), noting that the maximum observed score in the prior year was in the 50-60 range (moderate symptoms).[2]  (*Id.*, at 674).

Robert Holloway, Ed.D. consulted with Plaintiff in January 2010.  (*Id.*, at 407).  Dr. Holloway's report documents many of the same conditions and symptoms observed by Dr.Fields, including opioid dependence, PTSD and Antisocial Personality Disorder, as well as hypervigilance, panic attacks, Borderline Personality Disorder, psychomotor agitation, hostility/irritability, anxiety, social withdrawal and Major Depressive Disorder.  (*Id.*, at 407-411).  Plaintiff's mental capacity was found to be in the normal range, and Plaintiff was able to understand and carry out both simple and complex commands, though Dr. Holloway noted that Plaintiff's hypervigilance, panic attacks and anxiety would make it difficult for him to interact with the general public in a work environment or to complete a normal workday.  (*Id.*, at 411).

Separately, Dr. Celeste Derecho, a state agency reviewing psychologist, reviewed Plaintiff's medical record to assess his functional capacity.  (*Id.*, at 510-526).  In Dr. Derecho's opinion, dated March 15, 2010, that capacity included the following: Plaintiff could remember

---

[2] "The GAF scale is used to report a clinician's judgment of an individual's overall level of psychological, social, and occupational functioning and refers to the level of functioning at the time of evaluations." *Bernier v. Astrue*. 2011 WL 1832516 (D.Mass. May 13, 2011).  "A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school situations, but general functioning and the existence of some meaningful personal relationships.  A score between 51 and 60 indicates that the individual has moderate symptoms or moderate difficulty in social occupational, or school situations. 'A GAF score of 41-50 indicates an individual has serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)'" *Cruz v. Astrue*, 2012 WL 220535, *2 n. 2 (D.Mass. Jan. 24, 2012)(internal citations and citation to quoted case omitted).

and follow simple instructions, could focus on a simple task for up to two hours, would not require special supervision, could respond adequately to hazards and could set realistic goals or make plans independently, but could not interact with the public. (*Id.*, at 524). Dr. Derecho's assessment of Plaintiff's medical record was itself reviewed and confirmed by Dr. Ginette Langer on June 24, 2010. (*Id.*, at 578).

*Plaintiff's Physical Treatment*

Plaintiff suffers from, and has received treatment for, a variety of physical conditions. Plaintiff tests positive for Hepatitis C. (*Id.*, at 386). Plaintiff reports chronic back pain, for which he was first treated by Healthlink and later referred to the Spine Center at the UMass Medical Center. (*Id.*, at 468-69). An October 2009 MRI of Plaintiff's lower spine revealed substantial disc degeneration at L3-S1, limited herniation at L3-L4 and L4-L5, and mild-to-moderate neural foraminal narrowing at L3-S1. (*Id.*, at 388-389). Jason Eck, M.D., a UMass Medical employee examined Plaintiff on January 28, 2010 and noted that Plaintiff reported substantial discomfort in his back at that time. (*Id.*, 468-69). However, since Plaintiff was already scheduled for shoulder surgery in February 2010, no special medical treatment was undertaken.[3] (*Id.*). A June 2010 X-ray of Plaintiff's thoracic spine showed degeneration at C5 through C7, but the administrative record does not indicate that Plaintiff ever returned to Dr. Eck for further treatment. (*Id.*, at 566, 630).

Plaintiff also reported shoulder discomfort to Healthlink and, after examination, opted for shoulder surgery in February of 2010. (*Id.*, at 547-50, 655). This operation included a variety of corrective procedures including debridement, distal clavicle excision and subacromial

---

[3] Dr. Eck indicated that epidural injections might be used to treat Plaintiff's discomfort, but postponed any such treatment until after the shoulder surgery. (*Tr.*, 468-69).

decompression in February 2010, followed by physical therapy. (*Id.*). Plaintiff reported significant improvement in the condition of his shoulder afterwards. (*Id.*, at 658-89). The operation was performed by Michael Brown, M.D. who subsequently completed a Medical Source Statement of Ability to Perform Work-Related Activities (Physical). (*Id.*, at 661-69). This statement asserted that Plaintiff was able to: lift and carry up to twenty pounds continuously and 21-100 pounds occasionally; sit, stand or walk continuously for up to eight hours at a time; reach overhead with his right arm occasionally and frequently with his left; and continuously operate foot pedals. (*Id.* at 661-69). Dr. Brown's statement was completely silent as to several details, both directly related to Plaintiff's shoulder injury (i.e. Plaintiff's handedness) and tangential to it (i.e. Plaintiff's back conditions). (*Id.*, at 661-669).

Jane Banks, a nurse practitioner, and Erick Garcia, M.D., both employees of UMass Medical Center, prepared and signed a Physical Residual Functional Capacity Questionnaire on August 13, 2010 indicating that Plaintiff was unable to perform more than sedentary work with expected absenteeism. (*Id.*, at 670-73). This questionnaire asserted that Plaintiff could only sit for one hour continuously in an eight-hour workday, could stand or walk for two, and could walk, sit and stand in combination for no more than six hours of a full workday. (*Id.*, at 671). N.P. Banks signed the form on August 14, 2010, while Dr. Garcia's signature is dated August 13, 2010 and is in a field marked "*If this RFC is completed by a person other than a licensed physician (M.D. or D.O.)" (*Id.*, at 673).

### *Plaintiff's Ability to Perform Everyday Activities; Claimant's Ability to Work*

Elaine Cogliano, a vocational expert, also testified at Plaintiff's March 7, 2010 administrative hearing. (*Id.*, at 62-68). The ALJ presented Ms. Cogliano with three hypothetical fact patterns, one matching the functional capacity assessment of Dr. Brown, a second matching

the functional capacity assessment of Dr. Derecho and a third involving the physical and postural limitations set forth by Dr. Brown, but adding a limitation to medium exertion.  (*Id.*) The ALJ's first hypothetical, presented an individual who (1) could frequently lift and carry 21-50 pounds, (2) could occasionally lift and carry 51-100 pounds, (3) could sit, stand and walk up to eight hours a day, (4) occasionally assume all potential working postures, (5) could reach overhead frequently with the left arm but only occasionally with the right, (6) could reach frequently in all directions, (7) could continuously control foot pedals, (8) would be limited to unskilled labor, (9) could concentrate for two hours at a time, (10) could not interact at all with the general public, and (11) can adapt to routine changes in the work setting.  (*Id.*, at 62-63).  The third hypothetical preserved the preceding limitations, but added a twelfth parameter: the individual could sustain only medium exertion.  ((*Id.*, at 65-66).   The first and third hypotheticals produced identical results: such an individual would be employable in a variety of jobs ranging from janitor (4,000 in Massachusetts, 800,000 nationally) to laundry worker (4,000 in Massachusetts and 350,000 nationally).  (*Id.*, at 63).

The ALJ's second hypothetical presented an individual who (1) was limited to light exertion, (2) must avoid concentrated exposure to extreme temperature changes, vibration and hazards, (3) could occasionally assume all the necessary working postures, (4) could reach overhead frequently with the left arm but only occasionally with the right, (5) could reach frequently in all directions, (6) could continuously control foot pedals, (7) is limited to unskilled labor, (8) could concentrate for two hours at a time, (9) could not interact at all with the general public, and (10) can adapt to routine changes in the work setting.  (*Id.*, at 64-65).  Such an individual would be employable as a linen sorter (2,000 in Massachusetts or 250,000 nationally) or packager (2,000 in Massachusetts and 250,000 nationally).  (*Id.*, at 65).

Plaintiff's counsel presented the VE with three additional hypotheticals, one matching the physical limitations in the assessment of N.P. Banks and Dr. Garcia, and two more adding in the mental limitations included in the same. (*Id.*, at 68-70). Plaintiff's first hypothetical presented an individual who (1) could not sit for more than one hour continuously, (2) could not walk for more than two hours continuously, (3) could not sit, stand or walk in combination for more than six hours in a workday, (4) could not walk more than a quarter-mile continuously, (5) could frequently lift ten pounds and, (5) would have difficulty bending and stooping. (*Id.*, at 68-69). Ms. Cogliano was still able to identify a limited number of suitable jobs, such as packager (300 in Massachusetts, 10,000 nationally) or sorter (400 in Massachusetts, 20,000 nationally). (*Id.*, at 69). Plaintiff's second and third hypotheticals preserved all of the above-stated physical limitations, and also stipulated that the individual (6) could not attend to work for more than six hours of an eight hour work day and, in the third hypothetical, (7) could not complete a workday without symptom related problems such as pain, anxiety and hypervigilance that could force absenteeism. (*Id.*, at 69-70). Ms. Cogliano stated that either the sixth or seventh limitation would be sufficient to render such a person unemployable. (*Id.*, at 69-70).

Plaintiff does not object to any of the evidence offered by the VE, nor to any of the hypotheticals posed by the ALJ to her. (Docket No. 10 at 10-17). Plaintiff instead disputes the ALJ's selection of medical opinions upon which to base the hypotheticals. (*Id.*).

## **Standard of Review**

### *Standard of Review for the Commissioner*

To qualify for SSI, a claimant must demonstrate that s/he is disabled within the meaning of the Act. 42 U.S.C. § 423(d)(1). The term "disability" as the defined in the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment(s) must be severe enough to prevent the claimant from performing not only his or her past work, but also any substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1). In making such determination, the ALJ must assess the claimant's residual functional capacity ("RFC") in combination with the "vocational factors, [including the claimant's] age, education, and work experience". 20 C.F.R. § 404.1560(c)(1).

To determine disability, the ALJ evaluates the claimant's application utilizing the following five-step analysis:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; [and] 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001). It is the applicant's burden to show at Step 4 that s/he is not able to do past relevant work as the result of a "significant limitation;" if the claimant meets his/her burden, "the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." *Id.*; *see also* 42 U.S.C. 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [ALJ] may require."). It should also be noted that "[a]ll five steps are not applied to every

applicant, as the determination may be concluded at any step along the process." *Seavey*, 276 F.3d at 5.

### Standard of Review for Court Review of Commissioner's Decision

Pursuant to the Act, this Court may affirm, modify or reverse the Commissioner's final decision, with or without remanding the case for rehearing. 42 U.S.C. § 405(g). This Court reviews the Commissioner's final decision to determine whether: (i) the correct legal standard was applied, and (ii) the decision was supported by substantial evidence. *Seavey*, 276 F.3d at 9; *see also* 42 U.S.C. § 405(g). While the Court's review of questions of law is *de novo,* the Court defers to the Commissioner's findings of fact, so long as they are supported by substantial evidence. *Seavey*, 276 F.3d at 9-10. Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir. 1991)(even if administrative record could support multiple conclusions a court must uphold Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")

In applying the "substantial evidence" standard, the Court must bear in mind that it is the province of the ALJ, not the Court, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts in the evidence. *Ortiz,* 955 F.2d at 769. Ultimately, the Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the cause for a rehearing, 42 U.S.C § 405(g),[4] but reversal is warranted only if the ALJ committed a legal or factual error in evaluating a claim or if the record contains no "evidence

---

[4] Section 405(g) provides that "[t]he [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....".

rationally adequate…. to justify the conclusion." *Roman-Roman v. Comm'r of Soc. Sec.*, 114. Fed. App'x. 410, (1st Cir. 2004); *see also Manso-Pizarro v. Sec'y of Health and Human Services*, 76 F. 3d. 15 (1st Cir. 1996).

### ALJ's Findings and Decision

Following the hearing on March 7, 2011, the ALJ denied Plaintiff's claim on March 22, 2011.  In so doing, the ALJ conducted the five-step analysis outlined in 20 C.F.R. § 404.1520, to determine whether Plaintiff is disabled.  After evaluating the evidence, the ALJ concluded that Plaintiff is not disabled under the terms of the Act and therefore not eligible to collect SSI.  The findings of fact and conclusions which the ALJ made in reaching this determination are as follows:

(1)     Plaintiff has not engaged in substantial gainful activity since the date of application for SSI (September 28, 2009).  (This determination equates to Step 1 of the five-step process).

(2)     Plaintiff suffers from the following severe impairments: status post right shoulder surgery, chronic back pain and affective, anxiety, personality and substance abuse disorders.  (This determination equates to Step 2 of the five-step process).

(3)     Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (This determination equates to Step 3 of the five-step process).

(4)     Plaintiff has the residual functional capacity to perform medium work, being able to occasionally climb, balance, kneel, crouch, crawl and stoop, as well as lift or reach overhead with the right arm.  Plaintiff can sit, stand and walk each for eight hours in a workday, but is restricted to unskilled work which does not require him to sustain

concentration for more than two hours and has no contact with the general public.  (This determination constitutes part of Step 4 of the five-step process).

(5)     Plaintiff is unable to perform any past relevant work.  (This determination constitutes part of the Step 4 of the five-step process).

(6)     Plaintiff was born on March 30, 1968, placing him within the 'young' (18-49) classification on the date of application.  (This finding of fact is necessary to Step 5 of the five-step process).

(7)     Plaintiff has a marginal education and is able to communicate in English.  (This finding of fact is necessary to Step 5 of the five-step process).

(8)     Transferability of Plaintiff's job skills is not relevant in this case because Plaintiff's prior work was unskilled.  (This determination constitutes part of the Step 5 of the five-step process).

(9)     Considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (This determination constitutes part of Step 5 of the five-step process).

(10)     Plaintiff has not been under a disability, as defined by the Social Security Act, since September 28, 2009, the date of application.

(*Tr.*, at 85-92).

## ***Errors Alleged by Plaintiff and Scope of Issues Raised on Appeal***

Plaintiff alleges that the ALJ made seven separate errors in evaluating Plaintiff's claim: (I) the ALJ gave controlling weight to the RFC assessment of Dr. Brown; (II) the ALJ gave controlling weight to the mental health evaluation of drug rehabilitation care providers; (III) the

ALJ did not give controlling weight to the evaluation of Dr. Fields; (IV) the ALJ assigned great weight to the  mental residual capacity findings of the State Agency reviewing psychologist, Dr. Derecho; (V) the ALJ gave little or no weight to the assessment of N. P. Banks and Dr. Garcia; (VI) the ALJ failed to consider the evidence carefully; and (VII) the ALJ made unsupported credibility findings.  (Docket No. 10 at 10-17).

The parties do not dispute: that Plaintiff has not been engaged in substantial gainful employment since September 28, 2009; that he has severe impairments; that he does not have an impairment or combination of impairments that meets or medically equals one of the impairments enumerated in the Act; and that his impairment prevents performing in any past employment.  (*See id.*).   Disagreement, therefore, arises only with regard to Step 5 of the sequential evaluation process, *i.e.*, the evidence relied on by the ALJ in making her decision as to whether Plaintiff's impairments prevent him from performing other work of the sort found in the economy.  It is also undisputed that Plaintiff's physical impairments alone are insufficient to render him unemployable.[5]  *See id.*; (*Tr.*, at 69, 89).  This means that Plaintiff can only be disabled, for the purposes of the Act, by a combination of physical and mental impairments. Consequently, the ALJ's findings as to the credibility of Plaintiff's statements to both the ALJ and to healthcare providers regarding his psychological symptoms are of particular significance.

---

[5] Plaintiff's counsel presented the VE with three hypothetical scenarios, the first one included only the physical limitations included in N.P.Banks' and Dr. Garcia's Physical Residual Functional Capacity Questionnaire. Significantly, the VE found that such an individual would be employable.  Therefore, a hypothetical SSI claimant would only be disabled if s/he suffered from *both* the physical and mental limitations in the Physical Residual Functional Capacity Questionnaire signed by N.P. Banks and Dr. Garcia.

### Discussion

#### *(I) The ALJ Gave Controlling Weight to the RFC Assessment of Dr. Brown*

Plaintiff alleges that the ALJ erred in relying solely upon Dr. Brown's assessment of Plaintiff's physical capabilities, noting that Dr. Brown treated Plaintiff only for shoulder problems. (Docket No. 10 at 10-11). Additionally, Plaintiff argues that Dr. Brown's evaluation is not compatible with "objective findings of degenerative disease in the spine" contained elsewhere in the record. (Docket No. 10 at 12). Plaintiff's specific concern is that Dr. Brown is an orthopedist who treated Plaintiff only for his shoulder ailments and, indeed, Dr. Brown's evaluation does not indicate in any way whether Dr. Brown had any specific knowledge with regard to Plaintiff's back. (*Tr.* at 661-69) Plaintiff correctly notes that the ALJ is required to review all uncontroverted medical evidence in the record and generally to give more weight to the opinions of treatment sources. 20 C.F.R. §§ 416.927(c), 416.1444; *Suarez v. Sec'y of Health and Human Servs*, 740 F.2d 1 (1st Cir. 1984). However, when an ALJ must weigh the relative value of two inconsistent medical opinions, the resulting determinations are entitled to deference so long as are supported by substantial evidence. *Seavey*, 276 F.3d at 9-10; *Ortiz*, 955 F.2d at 769. Here, the ALJ found that Dr. Brown's statement was consistent with the prior medical record, unlike the questionnaire completed by N.P. Banks and Dr. Garcia. In combination with other considerations such as Plaintiff's credibility which will be discussed below, the ALJ determined that Dr. Brown's statement was entitled to controlling weight.

This is not a question of law entitled to *de novo* review by this Court, but a discretionary finding of the ALJ necessitated by the conflicting medical evidence included in the administrative record. *See Seavey*, 276 F.3d at 9-10. This determination of the ALJ relies

substantially upon the content of the medical record, as is evidenced by the ALJ's decision to emphasize the fact that "no treating or examining physician has suggested that the claimant has any physical impairment which prevents him from working." (*Tr.*, 89). The ALJ clearly stated her reasons for weighing Dr. Brown's opinion more highly than that of N.P. Banks and Dr. Garcia, and her ultimate conclusion is reasonable in light of the evidence in the administrative record. Plaintiff has failed to demonstrate that the ALJ ignored material evidence or made an error of law.

*(II) The ALJ gave controlling weight to the mental health*

*evaluation of drug rehabilitation care providers*

Plaintiff's second claim is that the ALJ erred in relying upon mental health evaluations made by the staff of Spectrum, a substance abuse rehabilitation clinic, rather than the later evaluations of mental health professionals at Healthlink and UMass Medical Center. (Docket No. 10 at 12-13). As in the first alleged error, the ALJ's decision to assign particular weight to conflicting evidence is exactly the sort of discretion that is entrusted to the ALJ and is therefore not entitled to *de novo* review. *See Ortiz*, 955 F.2d 765, 769. This Court's review of ALJ decisions is restricted to judging whether (i) the correct legal standard was applied, and (ii) the decision was supported by substantial evidence. *Seavey*, 276 F.3d at 9, *see also* 42 U.S.C. § 405(g). ALJs are explicitly permitted to give evidence from treatment sources less than controlling weight where they find that the evidence is not well supported by the medical record and/or is not consistent with the medical record. 20 C.F.R. § 416.927(c)(2). In this case there are inconsistencies between the information contained in Spectrum's medical records and those from Healthlink. The ALJ, based upon the factors set forth in § 416.927(c), has chosen to rely principally upon on the Spectrum records while still giving Dr. Fields' reports some weight.

(*Tr.*, at 88-89).  This is a discretionary determination that is entirely appropriate for an ALJ under both the regulations and interpreting caselaw cited in Plaintiff's motion.  *Keating v. Sec'y of Health and Human Servs.*, 848 F.2d 271, 276 (1st Cir. 1988); (Docket No. 10 at 13).

### (III) The ALJ did not give controlling weight to the evaluation of Dr. Fields

Plaintiff's third alleged error is that the ALJ erred in *not* relying upon the evaluation of Dr. Fields.   (Docket No. 12 at 13-14).  Plaintiff essentially claims that ALJs operate under a regulatory obligation to assign controlling weight to the opinions of treatment professionals. (*See id.*).  The presence or absence of such an obligation is a question of statutory and regulatory interpretation and is therefore entitled to *de novo* review by this Court.  *Seavey*, 276 F.3d at 9-10. However, the language of the regulation itself, as well as the relevant caselaw, is clear *and* unfavorable for Plaintiff; where there are inconsistencies in the medical records, ALJ's are not required to give controlling weight to the opinions of treatment sources, and the balancing of inconsistent medical evidence is properly left to the discretion of the ALJ.  *Ortiz*, 955 F.2d at 769; *see* 20 C.F.R. § 416.927.  It is within the authority of an ALJ to determine the appropriate weight to give any particular piece of medical evidence where there is inconsistency in the medical record.  *Ortiz*, 955 F.2d at 769; *see* 20 C.F.R. § 416.927.  Here the ALJ explicitly noted the inconsistent elements within Plaintiff's administrative record with regard to his mental functioning prior to claiming SSI.  (*Tr.*, at 90).  The ALJ also *did* accept the opinion of Dr. Fields by awarding it 'some weight' in her evaluation; most particularly, the ALJ noted that Dr. Fields' asserted Plaintiff's criminal history as a barrier to employment.  (*Id.*, at 89).  Due to the inconsistencies in the administrative record the ALJ is not obligated to give Dr. Fields' opinion controlling weight, and her decision is based upon substantial evidence contained with the record.  This Court will not disturb such a finding.

*(IV) The ALJ assigned great weight to the mental residual*

*capacity findings of the State Agency reviewing psychologist*

Plaintiff asserts that the ALJ improperly assigned great weight to the findings of Dr. Celeste Derecho, the State Agency reviewing psychologist, because Dr. Fields, and not Dr. Derecho, was the treatment source. (Docket No. 10 at 14). Defendant responds by noting that the ALJ must consider all relevant medical opinions, from both treating and non-treating sources, presented in the administrative record, whether from an examining source or not. 20 C.F.R. § 416.927(c)-(e). Defendant states the proper interpretation of the regulation and it is equally clear from caselaw that where there is inconsistency in the administrative record an ALJ need not give each opinion equal weight; instead the value of each is determined by considering a number of factors including the source. 20 C.F.R. § 416.927(c); see *Berrios Lopez v. Sec'y of Health & Human Servs.*, 951 F.2d 427 (1st Cir. P.R. 1991). The ALJ supports her determination by pointing to several Spectrum medical reports and contrasting them with later, conflicting, assessments by Dr. Fields. (*Tr.*, at 88-89). These include subjective measures such as GAF score, which in Dr. Fields' opinion decreased from 50-60 to 40-50 between 2009 and 2010, and more direct observations of posture and demeanor made by both Spectrum and Healthlink staff. (*Id.*). Additionally, the ALJ noted that the symptoms reported by Plaintiff changed significantly in November 2009, at roughly the same time that Plaintiff transferred to Healthlink and applied for SSI. (*Id.*).

Plaintiff also asserts that Dr. Derecho's report predates that of Dr. Fields, apparently suggesting that later evidence must be afforded greater weight than earlier evaluations. This argument is inapposite when considering whether or not the ALJ's findings are based upon substantial evidence. The ALJ is required to consider all relevant evidence in the administrative

record but is empowered to weigh the value of conflicting evidence using multiple factors, including the date of any evidence.  *See Ortiz*, 955 F.2d at 769.  In any event, Dr. Derecho's assessment was affirmed after and in light of the completion of Dr. Fields' evaluation by Dr. Ginette Langer, another State Agency psychologist.  (*Tr.*, at 577).  Plaintiff, after judging the various factors set forth in 20 C.F.R. § 416.927(c) would afford more weight to Dr. Fields' evaluation; the ALJ decided differently, but did so because Dr. Fields' evaluation was "not supported by the rest of the medical record."  (*Id.*, at 88-90).  Plaintiff has failed to demonstrate that the ALJ either failed to apply the proper legal standard or based her decision upon substantial evidence.  This is not reversible error.

*(V) The ALJ gave little or no weight to the assessment of*

*Nurse Practitioner Banks and Dr. Garcia*

Plaintiff asserts that the ALJ erred in giving little weigh to the assessment of N. P. Banks and Dr. Garcia, arguing that it is not clear that N.P. Banks, rather than Dr. Garcia had completed the assessment and that even if that were the case, N.P. Banks' opinion "should be weighed as a valid opinion of a health professional familiar with her patient."  (Docket No. 10 at 16).  Defendant responds that Dr. Garcia's signature is dated the day before N.P. Banks' signature, and located in a field to be used only if the form was filled out by someone other than a licensed physician.  (Docket No. 15 at 11).  Plaintiff's argument here rests not upon statutory interpretation, but upon findings of fact and circumstantial information about the evidence in the administrative record, and is therefore not entitled to *de novo* review by this Court.

The ALJ is charged with weighing the relative persuasive value of conflicting evidence and does not necessarily need to give more weight to the opinion of a treating professional. *Ortiz*, 955 F.2d at 769; s*ee* 20 C.F.R. § 416.927.  The ALJ, in making her conclusion, did not baselessly

reject the opinions of the treating physician and nurse, but rather weighed conflicting medical assessments in the light of the entire administrative record. *Ortiz*, 955 F.2d at 769.  This is evident from the ALJ's discussion of Plaintiff's physical capabilities in which she identifies the relative deficiencies of N. P. Banks' assessment when contrasted with the opinions of other treatment sources such as Spectrum, Dr. Fields and Dr. Brown.  (*Tr.*, at 88-89).  It is the responsibility of an ALJ to weigh the credibility of all relevant medical evidence presented by a claimant, and this Court is only empowered to reverse an ALJ's judgment when the decision is not supported by substantial evidence or makes some error of law.  *Seavey*, 276 F.3d at 9. Plaintiff's alleged error overlooks the fact that the ALJ *did* weigh N.P. Banks' opinion as "a valid opinion of a health professional," she simply found it inconsistent with, and less persuasive than, other evidence in the administrative record.

*(VI) The ALJ failed to consider the evidence carefully*

Plaintiff asserts that the ALJ did not give appropriate consideration to the evidence contained within the administrative record, pointing to various records omitted from the ALJ's decision, as well as the inclusion of irrelevant and duplicative material within the record itself.[6] (Docket. No. 10 at 16-17).  Defendant responds that Plaintiff has not specifically indentified a single piece of evidence that was not considered with sufficient care.  (Docket No. 15 at 19-20). Defendant also cites to authority stating that an ALJ need not mention every piece of evidence in an administrative record.  *Rodriguez v. Sec'y of HHS*, 1990 WL 152336, at *1 (1st Cir. Sept. 11, 1990) (unpublished).  As discussed above, Plaintiff has identified specific portions of the record

---

[6] Plaintiff points out that the administrative record includes some  three pages of materials relating to the treatment of one Eddy Palencia.  (Docket No. 10 at 16-17; *Tr.*, at 554-56).  While obviously not relevant to the consideration of Plaintiff's claim, there is absolutely no indication that the ALJ relied upon this information in making her decision, nor that the presence of this irrelevant material impugns the credibility or comprehensiveness of the other evidence in the record that was considered by the ALJ and clearly does relate to Plaintiff's treatment.

that, in Plaintiff's opinion, deserve greater weight than the ALJ afforded them.  But each of those

alleged errors was not reversible by this Court for the reasons stated above.  Plaintiff will not

prevail by making a less specific argument here regarding unidentified pieces of evidence.

Additionally, the caselaw cited by defendant is both relevant and significant.  It would be

impractical and ultimately counter-productive to require ALJs to expressly note every single

piece of evidence in an administrative record, especially where, as here, some of that evidence is

duplicative.  *See Rodriguez*, 1990 WL 152336, at *1.  ALJs are charged with reviewing the

evidentiary record, weighing the persuasive value of the various elements, and reaching

reasonable determinations based upon substantial underlying evidence using the framework of

the five-step process.  *See Seavey*, 276 F.3d at 5.   Plaintiff's argument fails because Plaintiff has

not shown specific pieces of evidence that were both essential to evaluating Plaintiff's claim and

insufficiently considered by the ALJ.  Instead the record indicates that the ALJ reviewed the

evidence in full and made reasonable determinations about which elements of the administrative

record deserved greater weight.  This is not a lack of care, but an exercise of the discretion

entrusted to ALJs by statute and regulation, and therefore not reversible error.  42 U.S.C. §

423(d)(2)(A); 20 C.F.R § 404.1560(c)(1); *Seavey*, 276 F.3d at 9-10.

*(VII) The ALJ made unsupported credibility findings.*

Plaintiff's seventh and final alleged error is that the ALJ erred in finding Plaintiff to be

incredible.  (Docket No. 10 at 17).  Defendant responds by pointing to the ALJ's decision which

discusses her credibility findings at some length.  (Docket No. 15 at 21).   The relevant caselaw

favors the defendant: "[i]t is the responsibility of the Secretary to determine *issues of credibility*

and to draw inferences from the record evidence."  *Ortiz*, 955 F.2d at 769 (emphasis added).  The

ALJ's decision does indeed discuss the issue of credibility at some length, pointing to a number

of specific pieces of evidence which led the ALJ to give little weight to Plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms". (*Tr.*, at 90-91). The most notable such portion of the record is Plaintiff's own admission, in September 2009 immediately prior to claiming disability, that he intended to apply for SSI even though he knew "it's not right and [he was] not going to justify it." (*Id.*, at 317). The ALJ noted inconsistencies between Plaintiff's testimony and reported symptoms; Plaintiff claimed that he had trouble communicating with people and leaving the house, and yet maintained romantic relationships and was arrested while driving a relative to the hospital. (*Id.*, at 90). Weight was also given to Plaintiff's demeanor and posture while appearing before the ALJ, and such judgments are entitled to deference because the ALJ has had personal contact with the plaintiff and is in a superior position to judge matters of credibility. *See Ortiz* 955 F.2d at 769. Additionally, the ALJ noted that although Plaintiff claimed that he needed to be reminded to bathe and otherwise care for himself, his treatment records consistently reported good hygiene. (*Tr.*, 91). And while Plaintiff complained of knee and back pain, he rarely attended physical therapy. (*Id.*). The First Circuit has noted that "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." *Dupuis v. Sec'y of Health and Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989). Additionally, the ALJ's determination regarding a claimant's complaints of pain and external limitations "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence [s/he] considered in determining to disbelieve the [claimant]". *DaRosa v. Sec'y of Health and Human Servs.*, 803 F. 2d 24, 26 (1st Cir. 1986). The ALJ here has provided a sufficiently particularized basis for her credibility determination. Furthermore, the ALJ ultimately reached a conclusion

that is both plausible and reasonable.  It is not the place of this Court to reverse such a decision in the absence of some other error of law or fact, which Plaintiff has not proven.

### Conclusion

For the foregoing reasons, the Defendant's Motion for an Order Affirming the Decision of the Commissioner is **GRANTED.**


**SO ORDERED**


*/s/ **Timothy S. Hillman***
TIMOTHY S. HILLMAN
DISTRICT JUDGE